UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ADSON5TH, INC., d/b/a CLICKPAYZ,

               Plaintiff,

       v.

BLUEFIN MEDIA, INC., and
BRAND TECHNOLOGIES INC.
d/b/a BLUEFIN MEDIA,

               Defendants.

DECISION AND ORDER
16-CV-143 (LJV)

## INTRODUCTION

This action is premised on a contract "[b]etween ClickPayz (Payzonline Inc.) and Bluefin Media (Bluefin)." Docket Item 1-2 at 14.[1] The question now before this Court is simple: Is plaintiff AdsOn5th, Inc., ("AdsOn5th") a party to this contract? In other words, are the plaintiff and "ClickPayz (Payzonline Inc.)" the same entity?

The defendants, in a motion to dismiss supported by extrinsic evidence, argue that "ClickPayz (Payzonline Inc.)" is a Canadian corporation called Payz Online Inc.,[2] which is not a party to this action. According to the defendants, AdsOn5th is a different corporation, and it therefore lacks standing to enforce the contract. AdsOn5th, by contrast, argues that it must be the "ClickPayz (Payzonline Inc.)" entity named in the contract because it does business under the name "ClickPayz."

---

[1] All pinpoint record citations are to the page numbers added at the top of each page by the CM/ECF system.

[2] This Court will refer to the Canadian corporation as "Payz Online Inc.," based on the Nova Scotia business entity search in the record. *See* Docket Item 5-5.

For the reasons set forth below, the defendants' motion to dismiss (Docket Item 2) for lack of standing is GRANTED.

## BACKGROUND

**THE PLEADINGS**

The plaintiff originally commenced this action in New York State Supreme Court, County of Erie, on January 13, 2016. *See* Docket Item 1-2. In its complaint, the plaintiff alleged, among other things:

- that it, "Adson5th, Inc. d/b/a ClickPayz[,] . . . is a corporation organized under the laws of the State of Florida . . . with its principal place of business located in Orchard Park, County of Erie, State of New York," *id.* at 4 (¶ 1);

- that it "and Defendant Bluefin Media entered into an Agreement," whereby the plaintiff "agreed to sell internet traffic to Bluefin Media, and Bluefin Media agreed to buy internet traffic from [the plaintiff]," *id.* at 7 (¶ 14); and

- that the defendants "breached the Agreement when [they] failed to provide payment to Plaintiff . . . in accordance with the terms of the Agreement." *Id.* at 7-8 (¶¶ 19, 23).

On February 18, 2016, the defendants filed a Notice of Removal to this Court, alleging diversity of citizenship as the basis for this Court's subject-matter jurisdiction. *See* Docket Item 1. Shortly thereafter, on February 25, 2016, the defendants filed the pending motion, which seeks an "Order of this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing Plaintiff's Complaint in its entirety, with prejudice." Docket Item 2 at 1. According to the defendants:

> [T]he Plaintiff lacks standing to sue on the contract at issue, which is between Defendant Brand Technologies, Inc., doing business as Bluefin Media, and a non-party Canadian corporation, Payzonline Inc. The named Plaintiff here is mentioned nowhere in the contract and cannot assert the rights of the Canadian corporation that is [a] party to [the] contract.

Docket Item 2-1 at 2.

The plaintiff submitted responding papers on March 11, 2016, arguing that it "clearly is a named party to the Agreement at issue and therefore has standing to assert its claims." Docket Item 3 at 2. On March 22, 2016, the defendants replied. Docket Item 5. And on March 29, 2016, this Court heard oral argument on the motion.

**THE SUBMISSION OF EVIDENCE OUTSIDE THE COMPLAINT**

In support of their motion to dismiss, the defendants submitted evidence outside the complaint, including two declarations from a corporate officer who signed the contract. *See* Docket Items 2-2 & 5-1. The defendants argued that this Court may consider evidence outside the complaint because their motion is based on the plaintiff's "lack of standing, which establishes a lack of subject matter jurisdiction under Rule 12(b)(1)." Docket Item 5 at 2 (citing *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 121 n.1 (2d Cir. 1998) and *R & B Realty Grp. v. Heiser*, 322 F. Supp. 2d 206, 208-09 (D. Conn. 2004)).

At least at first, the plaintiff wholly disagreed with the defendants on that point, arguing that this Court "must limit its consideration to facts stated in the complaint" or to documents integral to the complaint. *See* Docket Item 3 at 2-3. Nevertheless, the plaintiff also attached some evidence to its responding papers, presumably in an abundance of caution. *See, e.g.*, Docket Item 3-1.

At oral argument, this Court solicited further briefing from the plaintiff on the issue of which documents outside the complaint, if any, may be considered in connection with the defendants' motion. *See* Docket Item 6. But a short time later, the plaintiff instead requested permission to submit additional evidence. *See* Docket Item 7. This Court granted that request. So on April 5, 2016, the plaintiff submitted its additional evidence along with some additional briefing. *See* Docket Item 8, with attachments. According to that briefing, the plaintiff had revised its position on the submission of evidence and now agreed that this Court may consider competent evidence outside the pleadings "to assure itself of the existence of standing." *See* Docket Item 8 at 2-3 (quoting *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003)).[3] On April 12, 2016, the defendants submitted another memorandum of law—but no additional evidence—in response to the new materials that the plaintiff had submitted. *See* Docket Item 10.

**THE CONTRACT**

The two-page contract at issue is attached to the complaint. *See* Docket Item 1-2 at 14-15. According to the first line, it is an agreement "[b]etween ClickPayz (Payzonline Inc.) and Bluefin Media (Bluefin)." *Id.* at 14. After that first line, the contract uses the shortened names "ClickPayz" and "Bluefin" to refer to the parties. *Id.* at 14-15. The name of the Florida corporation that is the plaintiff in this action—AdsOn5th—does not appear anywhere.

Most of the substantive provisions of the contract address Bluefin's agreement to "buy traffic"—presumably internet traffic—from ClickPayz. *See id.* at 14. In other provisions, Bluefin agrees to make payments on an outstanding $150,000 debt owed to

---

[3] The plaintiff continued to argue that this Court should not consider certain evidence for other reasons, however, such as a declarant's lack of personal knowledge.

ClickPayz.  *See id*. at 14-15.  The contract concludes with a paragraph on choice of law and venue, in which the parties agree that the contract should be "construed and enforced in accordance with the laws of the State of New York."  *Id.* at 15.

The only signatures on the contract are those of two individuals, Steve Mandell and Stas Balanevsky, dated May 22, 2015.  *Id.*  The signature lines do not indicate which entities, if any, on whose behalf Mandell and Balanevsky signed the contract.  But the declarations submitted by the parties reveal that Mandell is "the chairman of Brand Technologies Inc., which does business as Bluefin Media . . . as well as the chairman of Bluefin Media, Inc.," Docket Item 2-2 at ¶ 1; and that Balanevsky is "the President of AdsOn5th, Inc. d/b/a Clickpayz."  Docket Item 3-1 at ¶ 1.  In other words, the contract appears to have been signed by an officer of the plaintiff (Balanevsky) and an officer of the defendants (Mandell).

**DISCUSSION**

**I.  THE PARTIES' ARGUMENTS**

The defendants contend that the complaint should be dismissed "with prejudice" because they contracted with a Canadian entity, Payz Online Inc., not with the plaintiff, AdsOn5th.  Because the plaintiff is a "non-party to a contract governed by New York law," the defendants argue, the plaintiff "lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[ ] an intent to permit enforcement by the third party' in question."  Docket Item 2-1 at 5 (alteration in original) (quoting *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)).  Here, they observe, there are no such terms.  The defendants also argue that although Payz Online Inc. may somehow be affiliated with the plaintiff, it "is a separate corporation and [Adson5th, Inc.]

has no standing to assert [Payzonline Inc.'s] legal rights." Docket Item 2-1 at 6

(alterations in original) (quoting *Hudson Optical Corp. v. Cabot Safety Corp.*, 162 F.3d

1148 (2d Cir. 1998) (Summary Order) ("A corporation does not have standing to assert

claims belonging to a related corporation, simply because their business is

intertwined."), and *Clarex Ltd. v. Natixis Sec. Am. LLC*, 2012 WL 4849146, at *6

(S.D.N.Y. Oct. 12, 2012) ("It is black-letter law that one corporation cannot assert an

affiliate's legal rights.").

The plaintiff's papers do not have much to say about the defendants' accurate

recitation of those legal principles. Instead, in a somewhat vague and conclusory

fashion, the plaintiff repeatedly insists that "AdsOn5th, Inc. is a party to [the contract],

albeit under its alias 'ClickPayz.'" Docket Item 3 at 3. In the words of the plaintiff's

president, Balanevsky:

> If you review the caption [of this lawsuit], it is AdsOn5th, Inc. doing
> business as ClickPayz. AdsOn5th, Inc. is the Clickpayz entity in the
> opening preamble of the contract which forms the subject matter of this
> litigation.

Docket Item 3-1 at ¶ 5. Thus, the plaintiff does not argue that it has standing to sue

because it is a third-party beneficiary, or because of an assignment, or because it is a

corporate affiliate of Payz Online Inc. In fact, the plaintiff's papers say very little about

the Canadian entity Payz Online Inc., never even acknowledging or denying that entity's

existence. Instead, the plaintiff says simply that because it does business as ClickPayz,

it must be the ClickPayz in the contract, and it must have standing to sue.

## II.  STANDING

"[T]he question of standing is whether the litigant is entitled to have the court

decide the merits of the dispute or of particular issues. This inquiry involves both

constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). In this case, the plaintiff brought state law claims, which the defendants removed to federal court on the basis of diversity jurisdiction. Therefore, standing under New York law also is an issue here. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) ("Where, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action."); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) ("The question of whether, for [non-constitutional] standing purposes, a non-party to a contract has a legally enforceable right therein is a matter of state law.").

### A. Article III Standing

Article III § 2 of the Constitution, which limits this Court's subject-matter jurisdiction to "cases and controversies," requires an "irreducible constitutional minimum of standing." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). Article III standing has three components: injury in fact, causation, and redressability. *Steel Co.*, 523 U.S. at 103-04. If the plaintiff does not have Article III standing, this Court lacks subject-matter jurisdiction and therefore "lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016).

**B.    Prudential Standing**

"Unlike the 'immutable requirements of Article III,' the 'prudential principles that bear on the question of standing' are 'judicially self-imposed limits on the exercise of federal jurisdiction,' and may be altered."  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).  The Supreme Court has described these prudential principles as "closely related to Art. III concerns but essentially matters of judicial self-governance."  *Warth*, 422 U.S. at 500.  One prudential limit on standing "is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties."  *Am. Psychiatric Ass'n*, 821 F.3d at 358; *see Rajamin*, 757 F.3d at 86.

Although prudential standing "is not jurisdictional in the sense that Article III standing is," *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (quotation omitted), it nevertheless is "the sort of 'threshold question'" that the Supreme Court "ha[s] recognized may be resolved before addressing [subject-matter] jurisdiction."  *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.")).

**C.    Standing Under New York Law**

New York courts impose prudential limitations on standing in a manner similar to that in federal courts.  According to the New York Court of Appeals, "[s]tanding is a threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria."  *Soc'y of Plastics Indus., Inc. v. Cty. of Suffolk*,

77 N.Y.2d 761, 769 (1991) (citing, among other authorities, *Warth*, 422 U.S. 490).

"Whether a person seeking relief is a proper party to request an adjudication is an

aspect of justiciability which, when challenged, must be considered at the outset of any

litigation." *Id.* And "one does not, as a general rule, have standing to assert claims on

behalf of another." *Caprer v. Nussbaum*, 36 A.D.3d 176, 182 (2d Dep't 2006).

III.     **PROCEDURAL PRINCIPLES**

      **A.     Rule 12(b)(1) and Rule 12(b)(6)**

      As previously noted, the defendants cited Fed. R. Civ. P. 12(b)(1) (lack of

subject-matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon

which relief can be granted) as the bases for their motion.

      When a Rule 12(b)(1) motion "is facial, *i.e.*, based solely on the allegations of the

complaint or the complaint and exhibits attached to it," *Carter*, 822 F.3d at 56, courts

apply the same procedure that they would apply to a Rule 12(b)(6) motion for failure to

state a claim. *See, e.g.*, *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145

(2d Cir. 2011); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009). In other

words, "the plaintiff has no evidentiary burden," and the "task of the district court is to

determine whether" the plaintiff has "allege[d] facts that affirmatively and plausibly

suggest that [it] has standing to sue." *Carter*, 822 F.3d at 56 (quoting *Amidax*, 671 F.3d

at 145); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to

dismiss" for failure to state a claim, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In this case, the allegations of the complaint are sufficient to defeat a facial challenge under either Rule 12(b)(1) or 12(b)(6).  Throughout the complaint, the plaintiff claims that it does business under the name "ClickPayz" and that it is, in fact, the party referred to in the contract as "ClickPayz (Payzonline Inc.)."  The complaint makes no mention of the Canadian entity that, according to the defendants, is the real party in interest.  Therefore, the plaintiff has alleged facts affirmatively and plausibly suggesting that it has standing to sue, and the defendants' motion depends on evidence outside the complaint.

But that is not fatal to the defendants' motion because under Rule 12(b)(1), a defendant also "is permitted to make a fact-based . . . motion, proffering evidence beyond the Pleading."  *Carter*, 822 F.3d at 57.  "In opposition to such a motion, the plaintiff[ ] will need to come forward with evidence of [its] own to controvert that presented by the defendant[s] 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Id.* (quoting *Exch. Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  The court then may assume the mantle of factfinder and weigh the evidence to determine its jurisdiction.  *See Carter*, 822 F.3d at 57; *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

When a Rule 12(b)(6) motion relies on material outside the pleadings, on the other hand, a court may convert the motion to a motion for summary judgment as long as the plaintiff has been "given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  The court then "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and emphasis omitted). "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

### B.    Framing the Defendants' Motion

To the extent that the defendants challenge the plaintiff's Article III standing, "the proper procedural route is a motion under Rule 12(b)(1)." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006); *see also McCarty v. The Bank of N.Y. Mellon*, 669 F. App'x 6, 7 n.1 (2d Cir. 2016) (Summary Order) (affirming Rule 12(b)(6) dismissal for lack of Article III and prudential standing but noting, in dicta, "that much of the district court's reasoning concerned McCarty's lack of standing to sue, which, at least as it relates to Article III standing, is properly adjudicated under Fed. R. Civ. P. 12(b)(1)").

To the extent that the defendants challenge the plaintiff's prudential standing or standing under New York law, the "proper procedural route" is less clear. Federal courts historically have labeled at least three different concepts as matters of "prudential standing," including (1) the rule against the adjudication of generalized grievances, (2) the rule barring claims that fall outside "the zone of interests" protected by a statute, and (3) the rule prohibiting plaintiffs from asserting the rights of third parties (which is most relevant here). *See Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016). But in

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the

Supreme Court recently explained that the "prudential standing" label has been

"misleading" when it comes to some of those concepts. Now, it is relatively clear that

the "prudential" issue of whether a plaintiff falls within the "zone of interests" protected

by a statute ought to be raised in a Rule 12(b)(6) motion, while the "prudential" issue of

whether a suit is barred by the rule against the adjudication of generalized grievances

ought to be raised in a Rule 12(b)(1) motion.[4]

Unfortunately for the analysis here, when it came to the rule that bars a litigant

from asserting the legal rights of another, the Supreme Court described that as "harder

to classify" and left "consideration of that doctrine's proper place in the standing

firmament [for] another day." *Lexmark*, 134 S. Ct. at 1387 n.3. Therefore, because the

rule barring a litigant from asserting the legal rights of another is a threshold issue that

concerns neither the merits nor Article III[5]—and because there is no Rule 12 motion that

---

[4] Writing for the Court, Justice Scalia explained that the question of whether a plaintiff falls within the "zone of interests" protected by a statute really asks whether a plaintiff "has a cause of action under the statute." *Lexmark*, 134 S. Ct. at 1387. In other words, it is "a merits question concerning the definition of the cause of action," not an issue of subject-matter jurisdiction. *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015). As a result, the proper procedural vehicle to raise that prudential issue would be a Rule 12(b)(6) motion. *See All. For Envtl. Renewal*, 436 F.3d at 89 n.6 ("a typical dismissal under Rule 12(b)(6), *i.e.*, for failure to state a claim, is an adjudication on the merits with preclusive effect"). Conversely, with respect to suits "seeking relief that no more directly and tangibly benefits [the plaintiff] than it does the public at large"—i.e., suits barred by the rule against the adjudication of generalized grievances—Justice Scalia explained that they "are barred for constitutional reasons, not 'prudential' ones." *Lexmark*, 134 S. Ct. at 1387 n.3 (quotation omitted). So to raise that standing issue, the proper procedural vehicle would seem to be a Rule 12(b)(1) motion.

[5] As previously noted, the Supreme Court has described prudential standing as a "threshold question" that can be addressed "before addressing jurisdiction." *Tenet*, 544 U.S. at 6 n.4 (quoting *Ruhrgas,* 526 U.S. at 585) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."). In

is precisely tailored to that issue[6]—this Court is faced with a difficult choice between Rule 12(b)(1) and Rule 12(b)(6).  Recent Second Circuit cases that involved the standing of a non-party to a contract did not depend on extrinsic evidence, so the court had little need to dwell on this choice—either way, the standard of review would be the same.  *See, e.g.*, *McCarty*, 669 F. App'x 6; *Rajamin*, 757 F.3d 79.  And other recent

---

other words, prudential standing is not an issue involving the merits.  *See also Steel Co.*, 523 U.S. 83.  Similarly, under New York law, a court's finding that a plaintiff lacks standing to sue on a contract does not amount to a determination of the merits.  *Landau v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 14 (2008) ("when the disposition of a case is based upon a lack of standing only, the lower courts have not yet considered the merits of the claim"); *Springwell Navigation Corp. v. Sanluis Corporacion, S.A.*, 81 A.D.3d 557, 917 N.Y.S.2d 560 (1st Dep't 2011).

[6] It is worth noting that under Rule 17(a) of the Federal Rules of Civil Procedure, "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  The federal rules do not, however, "contain a specific procedure" for defendants to raise this objection. *Siemens USA Holdings, Inc. v. United States*, 960 F. Supp. 2d 221, 223 (D.D.C. 2013) (quotation omitted).

Additionally, Rule 17 provides that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. R. Civ. P. 17(a)(3).  The Second Circuit has had few occasions to provide guidance on the application of this provision.  *See Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L*, 790 F.3d 411, 423 (2d Cir. 2015) (leaving unanswered the question of "whether a plaintiff may use Rule 17(a)(3) to remedy a standing deficiency when it lacks standing as to *all* of its claims," which was "an issue of first impression in this Court, if not the district courts in this Circuit").  In any event, this Court declines to delay the dismissal of this action to permit ratification or substitution because (1) the plaintiff did not raise Rule 17 or make any such request, and (2) the Second Circuit has recognized that the "district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party."  *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997).  Here, the plaintiff has not even acknowledged the existence of Payz Online Inc., let alone provided any "reasonable basis" why AdsOn5th was instead named as the plaintiff.

cases, which contain broad statements of the law on "prudential standing," also provide

little guidance.[7]

In any event, this Court finds that it was entirely appropriate for the defendants to

submit extrinsic evidence concerning the plaintiff's standing to enforce the contract—an

issue that ought to be addressed early in this litigation.  Based on the defendants'

arguments and the evidence, discussed in detail below, the issue they raise is more

prudential than constitutional.  Therefore, this Court finds that Rule 12(b)(6) and

conversion to summary judgment provide the best procedure to address the issue of the

plaintiff's standing. [8]  This procedure also mirrors the procedure applied in New York

courts.  *See, e.g.*, *Deutsche Bank Trust Co. Americas v. Vitellas*, 131 A.D.3d 52, 59-60,

---

[7] For example, one district court in this circuit held that "no motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) lies where the alleged 'lack of standing' is merely prudential." *Advanced Video Techs., LLC v. HTC Corp.*, 103 F. Supp. 3d 409, 418 (S.D.N.Y. 2015), *aff'd without opinion*, 677 F. App'x 684 (Fed. Cir. 2017).  And in a non-precedential decision, which specifically concerned the rule barring litigants from asserting the rights of others, the Second Circuit stated that "[p]rudential standing remains a jurisdictional requirement in our Circuit."  *In re Sofer*, 613 F. App'x 92, 92-93 (2d Cir. 2015) (Summary Order).  Such potentially contradictory statements of the law may be misleading in cases where courts and litigants have continued to use the term "prudential standing" to refer to standing issues that involve only a statutory "zone of interests" or generalized grievances.

[8] Although this Court did not give explicit notice to the plaintiff of the possibility of conversion to summary judgment, it is sufficient if "the parties were . . . apprised of the likelihood of conversion by less formal or direct means and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion."  *Kasiem v. Switz*, 756 F. Supp. 2d 570, 574 (S.D.N.Y. 2010) (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004), and *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985)).  In this case, the plaintiff submitted evidence in connection with its initial responding papers.  Thereafter, the plaintiff was given a second chance to submit evidence concerning its standing to enforce the contract.  Because that is the sole issue before this Court, and because there is no reason to believe that the plaintiff requires discovery on that issue, the defendant's motion can be converted into one for summary judgment.  Moreover, conversion in this case essentially results only in the plaintiff being afforded additional procedural protections, as explained below.

13 N.Y.S.3d 163, 170 (2d Dep't 2015) (on a pre-answer motion to dismiss, "the burden is on the moving defendant to establish, prima facie, the plaintiff's lack of standing," and "the motion will be defeated if the plaintiff's submissions raise a question of fact"). And after reviewing the parties' submissions and the evidence, this Court concludes that the plaintiff has failed to raise a dispute of material fact concerning its standing to enforce the contract.

As previously noted, the defendants' motion requested dismissal "with prejudice." Because the prudential standing issue in this case does not concern the merits of the plaintiff's claims, however, summary judgment here should be viewed as being limited to that standing issue. District courts in this circuit have issued similar judgments when faced with motions to dismiss prisoner lawsuits for failure to exhaust administrative remedies—another threshold issue that concerns neither the merits nor subject-matter jurisdiction and that also lacks a more appropriate Rule 12 motion. *See, e.g.*, *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003). If this Court instead were to apply Rule 12(b)(1), this Court still would dismiss the complaint, and the result essentially would be the same.[9]

## IV.    ANALYSIS

The defendants' evidence and the contract itself are sufficient to establish the defendants' entitlement to judgment as a matter of law. First, the name "ClickPayz

---

[9] ["W"]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." *Carter*, 822 F.3d at 54. But even jurisdictional dismissals "without prejudice" may have preclusive effect with respect to the threshold issues that led to the dismissal. *See In re Sonus Networks, Inc, S'holder Derivative Litig.,* 499 F.3d 47, 59 (1st Cir. 2007); *Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1358-59 (M.D. Fla. 2009); *see also McCarty, supra* (affirming district court's refusal to permit the plaintiff to file an amended complaint).

(Payzonline Inc.)" in the first line of the contract, Docket Item 1-2 at 14, on its face refers to a specific corporation.[10]  As the defendants point out, there actually is such a corporation—or, at least, a "Payz Online Inc."—which is incorporated in Canada and has an existence independent of the plaintiff.  *See* Docket Item 5-5.

Of course, pulling a similar corporate name out of a hat would not, by itself, be enough to question the plaintiff's standing; it is crucial that the defendants show that this similarly named corporation was, in fact, the actual party to the contract at issue.  The first evidence of this comes in the second full sentence of the contract, in which "Bluefin agrees to wire $20,000 to the ClickPayz account *in Canada*."  Docket Item 1-2 at 14 (emphasis added).  In other words, the fact that Payz Online Inc. is a *Canadian* corporation fits with the contract and supports the defendants' motion.[11]

Next, there is the far-more-convincing evidence that Payz Online Inc.—and not the plaintiff—actually was corresponding with the defendants, sending them invoices, and seeking payment based on the terms of the contract.  Among other items, the defendants submitted two letters, a W-8BEN IRS form, and a Canada Revenue Agency form, all of which the defendants received from a Chartered Accountant for Payz Online

---

[10] A name ending in "Inc." typically refers to a specific corporate entity.  In New York, where the plaintiff claims it has its principal place of business, the name of a domestic corporation must include the abbreviation "Inc." or a comparable indicator of corporate status.  *See* N.Y. Bus. Corp. Law § 301.  If the name of a foreign corporation that wants to operate in New York would not comply with that rule, the foreign corporation must add an indicator of corporate status to its name "for use in this state."  *Id.*  New York law also requires corporate names to be distinguishable from the names of other corporations or the New York-registered fictitious names of foreign corporations.  *See id.*  "The general purposes of" such laws "is to protect the public and to prevent deception and confusion."  *Jervis Corp. v. Sec'y of State*, 43 Misc. 2d 185, 186, 250 N.Y.S.2d 544, 545 (Sup. Ct. Nassau Co. 1964).

[11] A non-Canadian corporation, such as the plaintiff, also could have an "account in Canada," but the plaintiff submitted no evidence of that.

Inc.  *See* Docket Item 2-3 at 2-5; Docket Item 5-2 at 2.  The letters and forms all relate

to whether the defendants should withhold tax when making payments to Payz Online

Inc.[12]  AdsOn5th is not mentioned in these documents; they all are from "Payz Online

Inc.," with an address in Ontario, Canada, and that address is the same as the address

given for the president of Payz Online Inc.—one Todd Pelow—according to a printout of

an entity search performed on a Government of Nova Scotia website.  Docket Item

5-5.[13]  At the very least, these documents demonstrate that Payz Online Inc. is *not* an

entity that the defendants simply pulled out of a hat; rather, it is an entity that had a

business relationship with the defendants.

What is more, an invoice that the defendants submitted reveals the precise

nature of that relationship and shows that Payz Online Inc. was, in fact, seeking

payment from the defendants pursuant to the terms of the contract.  *See* Docket Item

5-3.  Like the other documents discussed above, the invoice is from "Payz Online Inc.,"

with an Ontario address; it does not even mention the plaintiff.  *See id.*  The invoice is

for "Run-Of-Network CPC Traffic August 16 to 31, 2015" and was due on September 6,

2015.  *Id.*  This tracks the terms of the contract, wherein Bluefin agreed to make

bimonthly payments for "traffic" on the 6th and 21st days of a given month.  *Compare id.*

*with* Docket Item 1-2 at 14-15.  Likewise, the invoice seeks a "35% additional payment

---

[12] In the letters, the accountant for Payz Online Inc., certifies "that all of the technology, manpower, and operations of clickPayz, owned by Payz Online Inc., are performed off-shore and not within the confines of the United States.  In addition we have no assets in the United States and are incorporated in Canada."  Docket Item 2-3 at 2; Docket Item 5-2 at 2.  Although the propriety of the letters and the tax forms is not at issue in this case, those letters and forms raise some concerns in light of the plaintiff's claim that it does business as "ClickPayz" in Orchard Park, New York.

[13] According to the entity search, "Payz Online Inc." is a "N.S. Limited Company."

to cover outstanding balance per agreement," which matches up with other provisions of the contract, under which Bluefin was to make such payments to cover an outstanding debt. *Compare* Docket Item 5-3 *with* Docket Item 1-2 at 14-15.[14]

The plaintiff does not argue that the defendants might have been buying the same thing, under the same contract terms, from two different organizations using names similar to "Payz Online." Obviously, such an argument would strain credulity. Nevertheless, and perhaps in an effort to definitively stamp out that possibility, the defendants also submitted another entity search—this one from the Florida Department of State—which shows that Pelow, the president of Payz Online Inc., and Balanevsky, the president of AdsOn5th, both are officers of a third corporation: Retapp, Inc. *See* Docket Item 5-6. The search provides the same address in Naples, Florida, for both Balanevsky and Pelow. *See id.* In other words, it is likely that they work together and that—as the defendants suggest—the Canadian entity, Payz Online Inc., "somehow is affiliated" with the plaintiff, AdsOn5th.

Thus, the defendants' evidence and the contract itself demonstrate that the defendants contracted with non-party Payz Online Inc. and not with the plaintiff, Adson5th. The plaintiff therefore had the burden to explain why it—an entity not named in the contract—claims standing to enforce the contract. But the plaintiff's vague submissions do not satisfy that burden and fail to raise a dispute of material fact.

---

[14] "For traffic beginning July 16th, and until the entire outstanding balance is paid, payments for traffic will be the greater of 135% of the traffic costs reflected in the ClickPayz panel or 30% of the gross revenue of all Bluefin advertising demand partners for the corresponding time period." Docket Item 1-2 at 14-15.

Indeed, the plaintiff's submissions do not raise any serious questions about the authenticity of the invoice or the other documents that the defendants received from Payz Online Inc. Nor do the plaintiff's submissions offer any evidence that, other than by filing and serving the complaint in this lawsuit, the plaintiff similarly sought payment from the defendants for delivering traffic. Instead—without acknowledging or denying a relationship to Payz Online Inc.—the plaintiff relies on its claim that it has used the names "Payz Online" and "Clickpayz" as assumed names or "aliases" to do business (in Florida, at least). *See, e.g.*, Docket Item 3 at 3. The plaintiff supports this with evidence showing that it has registered "Payz Online"—notably without the "Inc."[15]—and "Clickpayz" with the Florida Department of State as fictitious names. *See* Docket Items 3-2 & 3-3.

While it is true that a corporation may enter into a binding contract using an assumed or trade name, *see Walker v. Smith*, 257 F. Supp. 2d 691, 698 (S.D.N.Y. 2003) (collecting cases), the plaintiff's evidence does nothing to controvert the defendants' showing or to prove that "AdsOn5th, Inc. is the Clickpayz entity in the opening preamble of the contract." Docket Item 3-1 at ¶ 5. In fact, the plaintiff's evidence is entirely consistent with the suggestion that AdsOn5th and Payz Online Inc. are related—and that both, perhaps, use the name ClickPayz. In other words, it

---

[15] Balanasky states that AdsOn5th "was doing business as Payz Online, Inc.," but the registration the plaintiff submitted does not include the abbreviation "Inc." *Compare* Docket Item 3-1 at ¶ 7 *with* Docket Item 3-3. Moreover, Florida law would seem to prohibit the plaintiff from using such a fictitious name, Fla. Stat. Ann. § 865.09(14) (West), and the registration was merely an act "for public notice only," which gives rise to no "presumption of the registrant's rights to own or use the name registered," Fla. Stat. Ann. § 865.09(8) (West).

appears that the defendants contracted with Payz Online Inc. d/b/a ClickPayz but were sued by AdsOn5th d/b/a ClickPayz.

The only fact in the record that might give this Court pause in granting the defendants' motion is that Balanevsky—who, in his declaration, establishes that he is the plaintiff's president—signed the contract. But the contract does not say in what capacity he signed it, nor does the plaintiff submit anything suggesting that Balanevsky did not also have a relationship with Payz Online Inc. Therefore, based on the other evidence and the vagueness of the plaintiff's submissions regarding Payz Online Inc., Balanevky's declaration does not raise a dispute of material fact.

The plaintiff also submitted an email and credit card authorization form that Balanevsky sent to the defendants, but it is not clear what those documents are supposed to prove. The authorization form bears the name "clickPAYZ," Docket Item 8-2, and the email was sent from a "clickpayz.com" email address, Docket Item 8-3. Neither document mentions AdsOn5th by name. And neither document can possibly be an attempt to collect payment on the contract because both documents are dated in February 2014—more than 15 months *before* the contract was signed. As a result, neither document sheds any light on whether AdsOn5th or some other entity is the "ClickPayz (Payzonline Inc.)" entity referred to in the contract. All those documents show is (1) that the defendants had dealings with the plaintiff's president, Balanevsky— a fact the contract itself already made clear, and (2) that Balanevsky is associated with at least one entity that goes by some variation of the name "clickpayz"—another fact already made clear by other evidence. The question before this Court is whether

AdsOn5th is improperly attempting to assert the legal rights of another, apparently affiliated corporation. And on that issue, the plaintiff's silence is deafening.

Some questions remain unanswered,[16] but this Court need not answer them to resolve the defendants' motion. Because the defendants submitted enough evidence to demonstrate their entitlement to judgment as a matter of law, and because the plaintiff failed to in any way controvert that showing or raise a dispute of material fact, the defendants are entitled to summary judgment.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss for lack of standing (Docket Item 2) is converted to a motion for summary judgment and GRANTED. The Clerk of Court shall take all steps necessary to close this case.

SO ORDERED.

Dated:  July 13, 2017
        Buffalo, New York

_s/Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATED DISTRICT JUDGE

---

[16] For example: If Payz Online Inc. is connected to Mr. Balanevsky and is the entity actually sending invoices to the defendants and collecting money, why was Payz Online Inc. not simply a plaintiff (or a co-plaintiff) in this lawsuit? Why does AdsOn5th seem to be conducting business in Orchard Park, New York, while requiring the payments for its services to be sent to a Canadian corporation—a Canadian corporation that, in connection with tax forms, says it has no operations in the United States? Is any of that connected to the fact that the president of Payz Online Inc. previously was prohibited from sending spam emails in New York after an enforcement action by the New York Attorney General? These questions have no bearing on this Court's decision on the instant motion, but one cannot help but wonder about the answers.